UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON EUGENE MORRIS,<br><br>   Plaintiff,<br><br>   v.<br><br>EVANS, et al.,<br><br>   Defendants. | Case No. 10-cv-04010-WHO (PR)<br><br>**ORDER OF SERVICE;**<br><br>**ORDER DIRECTING DEFENDANTS TO FILE A DISPOSITIVE MOTION OR NOTICE REGARDING SUCH MOTION;**<br><br>**INSTRUCTIONS TO CLERK** |

**INTRODUCTION**

Plaintiff Leon Morris alleges that, because he is litigious, he was retaliated against by thirty six correctional officers at Salinas Valley State Prison in 2004 and 2005. Dkt. No. 11. In his amended complaint filed under 42 U.S.C. § 1983, he cites nineteen different incidents, most of which seem unrelated and do not, on their own, rise to the level of a constitutional violation. His allegations of a conspiracy are not sufficiently detailed to be plausible.

Given my responsibility to preliminarily screen Morris's complaint pursuant to 28 U.S.C. § 1915A(a), I will limit this lawsuit to the earliest potentially plausible claim-- excessive force in June 2004 against officers Pastor, Sztukowski and Hubbard--and dismiss the rest without prejudice. In this regard, I direct defendants to file in response to

the operative complaint a dispositive motion, or notice regarding such motion, on or before January 20, 2015, unless an extension is granted. I further direct that defendants adhere to the notice provisions detailed in Section 10 of the conclusion of this order.

As Judge Gonzalez-Rogers's Order of January 22, 2014 suggests, Morris's claim may be untimely. Dkt. No. 21. Defendants may wish to file a motion to dismiss on such grounds, but they are not required to do so. If defendants file such a motion, they must discuss Morris's contention that the statute of limitations does not bar his claims because the claims were in nearly continuous litigation, and rarely out of the courts.

## DISCUSSION

### A.  Standard of Review

Morris is a pro se state prisoner. A federal court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In this review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b) (1),(2). Pro se pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).[1]

A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). Furthermore, a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55

---

[1] This case was transferred to me on January 22, 2014, but inexplicably escaped my attention until quite recently. I apologize for the delay in addressing it.

(9th Cir. 1994). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Under Federal Rule of Civil Procedure 20, persons may be joined in one action as defendants only if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

**B.     Legal Claims**

Morris raises 19 claims against 36 defendants, all employees of Salinas Valley State Prison.[2] He alleges that **(1)** in February 2004, Salinas Valley Correctional Officer G. Bailey threw out Morris's property, including religious materials (Am. Compl. at 9)[3]; **(2)** in the months following February 2004, Biaggini, C. Tschabold, Bailey, C. Wilson, Rivera, and L. Orneles "tore up" his cell on numerous occasions, leading to missing property (*id.* at 9); **(3)** in June 2004, Salinas Valley Correctional Officers R. Pastor and Sztukowski used excessive force against him in retaliation for reporting Pastor's alleged mistreatment of E.O.P. patients, while correctional officer Hubbard failed to intervene (*id.* at 4); **(4)** in June 2004, correctional officers Bocella and L. Washington violated the Eighth Amendment by making him stand in a cage for 12 hours without access to food, water, or a toilet (*id.* at 6); **(5)** in June 2004, correctional officer Cox failed to give him breakfast or lunch and said, "you don't deserve to eat" (*id.* at 12); **(6)** in November 2004, Lt. Rankin falsified a rules violation report against Morris (*id.* at 6); **(7)** in November 2004, correctional officers Bocella and L. Washington violated the Eighth Amendment by forcing Morris, along with other inmates, to stand outside in the cold weather for over 6

---

[2] The amended complaint groups the nineteen separate incidents into six "claims," but each incident will be considered a claim for purposes of this analysis.
[3] The cited page numbers correspond to the ones generated by the Court's electronic filing system.

hours (*id.* at 7); **(8)** in November 2004, C. Searby and T. Ortega refused to give Morris food (*id.* at 11); **(9)** in November 2004, correctional officers C. Searby and T. Ortega denied him his mail and his dinner on one night (*id.* at 10-11); **(10)** in November 2004, T. Robinson, D. Smith, Grande and Clare refused to serve him his food (*id.* at 12);[4] **(11)** in December 2004, C. Wilson gave him a sack lunch containing only a rotten pear (*id.* at 11); **(12)** in January 2005, L. Orneles and R. Machuca withheld his mail (*id.* at 11); **(13)** in January 2005, R. Porcello and Villalobos did not give him breakfast (*id.* at 11); **(14)** in February 2005, correctional officers L. Orneles and Tschabold told fellow prisoners that Morris had been convicted of murder and announced the name of the victim (*id.* at 11); **(15)** in March, April, and May 2005, correctional officers C. Searby, R. Chavez, D. Smith, L. Orneles, R. Machuca Jr., and Santiago were deliberately indifferent to his serious medical needs when they ignored a doctor's treatment instructions (*id.* at 5); **(16)** in two days during March 2005, correctional officers Biaggini, Ippolito, McBride, G. Bailey, C. Searby, R. Grand, Hood and Silva violated the Eighth Amendment by forcing him to stay outside in the cold and depriving him of sleep just after Morris had had surgery (*id.* at 7); **(17)** in April 2005, R. Chavez falsified a rules violation report against Morris (*id.* at 6); **(18)** in April 2005, correctional officers Rocha, T. Ortega, Burke, Picaszso, Sotelo, R. Machuca Jr., Aldana, Reyes, D. Perez, and R. Porcello withheld a piece of Morris's incoming legal mail for six weeks (*id.* at 11); and **(19)** in May 2005, C. Wilson gave Morris a "mildewed lunch" (*id.* at 11).

Morris attempts to link these disparate events by alleging that they are acts of retaliation by the Salinas Valley correctional officers (whom he collectively calls the "Greenwall Gang") who dislike Morris because of his litigiousness. As proof of this conspiracy to retaliate, he alleges that in February 2005, correctional officer Ippolito said to Morris that "everybody hates you" because "you file 602 complaints against them." (Am. Compl. at 12.)

---

[4] Morris alleges that he has found staples and sharp wood and other "hard foreign material" in his food, yet he does not provide dates or defendants. (Am. Compl. at 12.)

4

This is insufficient to justify the inclusion of these disparate claims in one action. Ippolito's statement does not indicate what specific persons constitute "everybody," and certainly does not tie any specific defendant named in the complaint as part "everybody." Nor does it indicate which claims are instances of retaliation. Does the statement cover events in 2004 or 2005? Both years? In each instance? Further, there is no specific allegation that Morris filed a 602 grievance against each defendant before the allegedly retaliatory action occurred.

Morris also alleges that the acts of retaliation started in June 2004, two days after he reported R. Pastor's alleged abuse of E.O.P. inmates. (Am. Compl. at 3-4.) While this allegation may explain why Pastor used excessive force against him, it does not serve to tie the other claims together as acts arising from a conspiracy to retaliate. It certainly does not cover the February 2004 destruction of property, which occurred before the alleged triggering event of reporting Pastor for abuse.

Morris's claims, involving 36 different defendants committing different acts (excessive force, deprivation of due process, deliberate indifference, withholding mail, serving bad food) at different times over two years, are unrelated by fact or law. They run afoul of Federal Rule of Civil Procedure 20.

Only the earliest plausible claim may proceed here: that in June 2004, correctional officers R. Pastor and Sztukowski used excessive force against Morris, and officer Hubbard failed to intervene.[5] When liberally construed, this claim is cognizable under § 1983. The remaining claims are DISMISSED without prejudice to Morris bringing them in separate actions, either in state or federal court.

---

[5] Claims 1 and 2, though first in time, were not selected because they would be subject to dismissal without leave to amend. Morris's allegations do not contain sufficient factual matter to state claims under § 1983. Neither the negligent nor intentional deprivation of property states a claim under § 1983 if the deprivation was, as was alleged here, random and unauthorized. *See Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981). The availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient process. *See Zinermon v. Burch*, 494 U.S. 113, 128 (1990). California law provides an adequate post-deprivation remedy for any property deprivations. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. The Clerk of the Court shall issue summons and the United States Marshal shall serve, without prepayment of fees, a copy of the amended complaint in this matter (Docket No. 11), all attachments thereto, and a copy of this order upon R. Pastor, Sztukowski, and Hubbard, correctional officers at Salinas Valley State Prison. The Clerk shall also mail courtesy copies of the amended complaint and this order to the California Attorney General's Office.

2. No later than ninety (90) days from the date of this order, defendants shall file a motion for summary judgment or other dispositive motion with respect to the claims in the complaint found to be cognizable above.

   a. If defendants elect to file a motion to dismiss on the grounds plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), defendants shall do so in a motion for summary judgment, as required by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc).

   b. Any motion for summary judgment shall be supported by adequate factual documentation and shall conform in all respects to Rule 56 of the Federal Rules of Civil Procedure. Defendants are advised that summary judgment cannot be granted, nor qualified immunity found, if material facts are in dispute. If any defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the Court prior to the date the summary judgment motion is due.

3. Plaintiff's opposition to the dispositive motion shall be filed with the Court and served on defendants no later than forty-five (45) days from the date defendants' motion is filed.

4. Defendants shall file a reply brief no later than fifteen (15) days after plaintiff's opposition is filed.

5. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

6. All communications by the plaintiff with the Court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

7. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16-1 is required before the parties may conduct discovery.

8. It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

9. Extensions of time must be filed no later than the deadline sought to be extended and must be accompanied by a showing of good cause.

10. A recent decision from the Ninth Circuit requires that pro se prisoner-plaintiffs be given "notice of what is required of them in order to oppose" summary judgment motions at the time of filing of the motions, rather than when the court orders service of process or otherwise before the motions are filed. *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012). Defendants shall provide the following notice to plaintiff when they file and serve any motion for summary judgment:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
>
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact — that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that

contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you.  If summary judgment is granted, your case will be dismissed and there will be no trial.  *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998).

**IT IS SO ORDERED.**

**Dated:**  October 20, 2014



WILLIAM H. ORRICK
United States District Judge